# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JAYNE L. SORRELL,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:14-cv-625

Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 11), the Commissioner's response in opposition (Doc. 14), and plaintiff's reply memorandum (Doc. 17).

## I. Procedural Background

Plaintiff protectively filed applications for DIB and SSI in November 2010, alleging disability since May 1, 2010,[1] due to a back injury and high blood pressure. (Tr. 294).[2] These applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) George Gaffaney. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On November 15, 2012, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final

---

[1] Plaintiff amended her alleged onset date to September 25, 2010 at the administrative hearing. (Tr. 62).
[2] The page numbers referenced herein are taken from the administrative record.

administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the

sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since September 25, 2010, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: degenerative disc disease of the lumbar spine, edema of the lower extremities secondary to mass on kidney, hypertension, and obesity (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. The [plaintiff] has the residual functional capacity to perform a range of sedentary work, as defined in 20 CFR 404.1567(a) and 416.967(a). In terms of exertional limitations, the [plaintiff] is limited to only occasional lifting of ten pounds and frequent lifting of five pounds, standing two hours in an eight-hour workday, and sitting six hours in an eight-hour workday. The [plaintiff] is limited to only walking two blocks at a time. Regarding nonexertional limitations, the [plaintiff] is limited to only occasional stair climbing, stooping, and balance. The [plaintiff] is limited to no kneeling, crouching, or crawling. The [plaintiff] is limited to no ladder climbing. In terms of environmental limitations, the

[plaintiff] is limited to only occasional exposure to hazards (i.e., heights and moving parts).[2]

6. The [plaintiff] is capable of performing past relevant work as a data entry clerk and circuit board assembler. This work does not require the performance of work-related activities precluded by the [plaintiff's] residual functional capacity (20 CFR 404.1565 and 416.965).

7. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from September 25, 2010, through the date of [the ALJ's] decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 42-50).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

---

[2] The ALJ noted that Social Security Ruling 83-10 defines "occasionally" as occurring from very little to one-third of the time, which equates to approximately two hours out of an eight-hour workday, and "frequently" as occurring from one-third to two-thirds of the time, which equates to approximately six hours out of an eight-hour workday. (Tr. 45).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that the ALJ erred by: (1) failing to account for plaintiff's need to elevate her legs in the residual functional capacity (RFC) finding; (2) rejecting the opinion of plaintiff's treating physician; and (3) assessing plaintiff's credibility. (Doc. 11).

**1. The ALJ did not err in rendering the RFC finding.**

Plaintiff contends that although the ALJ recognized that edema of her legs was a severe impairment, the ALJ erred by failing to include any restrictions in the RFC to account for the limitations caused by her edema. (*Id*. at 11). Plaintiff contends that the ALJ ignored evidence that she regularly had edema of her lower extremities on examination. (*Id*. at 12, citing Tr. 528, 530, 539, 541, 634, 637, 641, 685, 691, 695, 698, 710, 712, 737-40, 786-89). Plaintiff further contends that the ALJ ignored evidence showing that her edema required her to elevate her legs and avoid prolonged standing. (*Id*. at 13, citing Tr. 90). Plaintiff cites the following evidence to show the ALJ erred in this regard: (1) her testimony from the ALJ hearing that her doctors told her to raise her legs above heart level to alleviate leg swelling when it occurred (Tr. 69); (2)

emergency room discharge form instructions she received in September 2011 which advised her to elevate her legs and avoid long periods of standing to alleviate edema (Tr. 646); and (3) plaintiff's subjective report in August 13, 2011, that the swelling in her feet went down when she elevated her feet but returned after she was on her feet for an hour (Tr. 713). (Doc. 11 at 12). Finally, plaintiff alleges that the federal government has recognized that raising the legs to the level of the heart while lying down is a treatment for peripheral edema.[4] (*Id.* at 12-13). Plaintiff argues that if the ALJ had properly included the need to elevate her legs to waist level in the RFC finding, she would be precluded from performing all jobs. (*Id.* at 13, citing Tr. 90 - VE testified that plaintiff's past work and sedentary work in general would be precluded if she were required to recline with her feet elevated to waist level for any period of time).

The Commissioner acknowledges that the medical evidence includes several treatment records which include a recommendation that plaintiff elevate her legs. Specifically, after presenting to the emergency room in May 2011 with edema that was ultimately attributed to plaintiff's sleeping position, plaintiff was discharged with recommendations to elevate her legs, use TED (thromboembolism-deterrent) hose, and follow up with her primary care physician. (Doc. 14 at 5, citing Tr. 533). In addition, plaintiff reported in August 2011 that the swelling in her feet subsided when her feet were elevated and returned after she was on her feet for an hour. (*Id.* at 6, citing Tr. 713). Further, after presenting to the emergency room in September 2011 with edema, plaintiff was given an edema information sheet with home care instructions to elevate the legs "above the level of the heart, while lying down." (*Id.*, citing Tr. 645-47). The

---

[4] *See* http://www.nlm.nih.gov/medlineplus/ency/article/003104.htm (suggesting as home care tips for peripheral edema raising one's legs to the level of the heart while lying down, exercising one's legs, following a low-salt diet, wearing support stockings, and losing weight if necessary).

Commissioner also acknowledges that the record documents swelling of the lower extremities. (*Id.*, citing Tr. 388, 396, 650, 750, 762, 764, 802). The Commissioner contends, however, that the ALJ accounted for plaintiff's edema by restricting her to a range of sedentary work and imposing a limitation against walking more than two blocks at a time. (*Id.* at 5, citing Tr. 45).

The record includes multiple reports of edema and documents several visits by plaintiff to the emergency room for the condition. (*See* Tr. 530-33, 5/3/11- plaintiff seen in emergency room for bilateral leg swelling which attending physician attributed to sleep position from the prior night, diagnosis of edema made, and plaintiff advised to elevate legs, use TED hose, and follow up with primary care physician; Tr. 539, 7/12/11- bilateral foot and ankle swelling reportedly began after new blood pressure medicines were started and returned after medication was restarted; Tr. 634, 9/6/11- plaintiff presented to emergency room with bilateral lower level edema and resulting mild discomfort which had been present for the last several months and had worsened over the last several weeks, and she was given edema information sheet upon discharge with recommendation to elevate the legs "above the level of the heart, while lying down"; Tr. 713, 8/13/11 - plaintiff reported swelling in her feet went down when the feet were elevated and returned after she was on her feet for an hour; Tr. 685, 691, 695, 698, 710, 712- edema consistently noted in treatment records between August 2011 and September 2012). Nonetheless, no treating or examining physician noted a need for plaintiff to elevate her legs or imposed any other functional limitation to account for plaintiff's edema.

In fact, there is only one mention of edema among the several medical assessments of record. These assessments include two reports completed by Dr. Andrea Tewell, D.O., plaintiff's treating physician: (1) a basic medical form Dr. Tewell completed after last seeing plaintiff in

7

January 2011 (Tr. 474-75), and (2) a questionnaire dated June 4, 2012, which Dr. Tewell

submitted at the request of the SSA. (Tr. 740-47). Dr. Tewell reported in the January 2011

assessment that plaintiff had no edema on physical examination (Tr. 474), and she did not list

edema among the conditions for which she treated plaintiff. (Tr. 740-47). Dr. Kevin Malloy,

M.D., completed a basic medical form after last seeing plaintiff on May 10, 2012. (Tr. 687-88).

Dr. Malloy reported that plaintiff had 1+ edema on physical examination, but he did not list

edema among plaintiff's physical conditions and he attributed plaintiff's functional limitations to

back and knee pain only. Dr. Jerry McCloud, M.D., reviewed the medical evidence of record and

issued an RFC assessment dated February 11, 2011, assessing plaintiff as capable of performing

a restricted range of light work. (Tr. 99-101). Dr. McCloud imposed some postural restrictions

to account for plaintiff's early emphysema, degenerative disc disease and obesity, but he did not

reference edema in his assessment. (*Id.*). His assessment was affirmed on reconsideration by Dr.

Edmond Gardner, M.D., whose report likewise did not reference edema. (Tr. 136-38).

The ALJ acknowledged the medical evidence of edema and noted some reports of leg

swelling. (Tr. 47, citing Tr. 527-37, 634-47, 689-736, 737-39). However, plaintiff has not

shown that the ALJ erred by failing to incorporated additional functional limitations into the RFC

finding to account for plaintiff's edema. The mere diagnosis of a condition is insufficient to

support a disability finding; instead, disability is determined by the functional limitations

imposed by a condition. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Plaintiff has not

pointed to any medical opinion evidence that shows her edema imposed any functional

limitations in addition to those included in the ALJ's RFC finding. Specifically, plaintiff has not

pointed to a medical opinion that indicates she must elevate her legs during any portion of an

8

eight-hour workday to alleviate edema symptoms. Accordingly, plaintiff has failed to demonstrate that the ALJ's RFC finding limiting her to a restricted range of sedentary work is not substantially supported by the record. Plaintiff's first assignment of error should be overruled.

**2. The ALJ did not err in weighing the opinions of plaintiff's treating physician.**

Plaintiff alleges that the ALJ erred by rejecting the opinions of her treating physician, Dr. Tewell. (Doc. 11 at 13-16). It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

On the other hand, opinions from nontreating and nonexamining sources are never assessed for "controlling weight." A nontreating source's opinion is weighed based on the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Wilson*, 378 F.3d at 544. The opinion of a nontreating but examining source is generally entitled to more weight than the opinion of a nonexamining source. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010); 20 C.F.R. § 404.1527(c)(1); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Because a nonexamining source has no examining or treating relationship with the claimant, the weight to be afforded the opinion of a nonexamining source depends on the degree to which the source provides supporting explanations for his opinions and the degree to which his opinion considers all of the pertinent evidence in the record, including the opinions of treating and other examining sources. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

Plaintiff's treating physician, Dr. Tewell, completed a medical assessment indicating she had last examined plaintiff on January 25, 2011 (Tr. 474-75), and a questionnaire dated June 4, 2012. (Tr. 740-47). In the 2011 assessment, Dr. Tewell opined that plaintiff could lift and carry up to five pounds; stand/walk for ten minutes total in an eight-hour workday; and sit for 30 minutes total in an eight-hour workday. (Tr. 475). Dr. Tewell also opined that plaintiff was extremely limited in her ability to push/pull; markedly limited in her ability to bend/reach; and moderately limited in her ability to handle and perform repetitive foot movements. (*Id*.). In the space for specifying "[w]hat observations and/or medical evidence led to your findings" and providing "examples of the specific physical limitations," Dr. Tewell wrote: "[Patient] was asked

10

the questions." (*Id.*).  Dr. Tewell concluded that Plaintiff was unemployable and the limitations

would last between nine and eleven months.  (*Id.*).

In June 2012, Dr. Tewell completed interrogatories submitted to her by the SSA "to

obtain clarification of how the claimant's medical impairments affect her ability to perform

certain work-related functions." (Tr. 740-47).  Dr. Tewell reported that she had treated plaintiff

for lumbar pain, irritable bowel syndrome (IBS), hypertension (HTN), anxiety, "hyperlipid," and

depression.  (Tr. 741).  Dr. Tewell reported that Plaintiff could lift and carry up to five pounds;

stand/walk and sit a total of 0-1 hours each during an eight-hour workday; sit for 0 hours without

interruption during the workday due to leg numbness; and occasionally climb/kneel and never

balance, stoop, crouch or crawl.  (Tr. 743-44).  Dr. Tewell also found that plaintiff's ability to

push/pull was affected by her impairments.  (Tr. 745).  In response to an interrogatory asking Dr.

Tewell "[w]hat medical findings support this assessment," she again responded: "[patient] was

asked the questions." (Tr. 745).  Dr. Tewell attributed plaintiff's limitations to lumbar pain and

leg numbness that occurred after sitting for "long periods." (Tr. 741-46).  She also opined that

plaintiff had the RFC to perform sedentary work, which the questionnaire defined as work which

requires lifting a maximum of 10 pounds, carrying articles such as small tools, primarily sitting

with the option to sit/stand, and occasional walking/standing.  (Tr. 747).  She indicated that

plaintiff would be absent about three days a month as a result of her impairments or treatment.

(*Id.*).

The ALJ mistakenly attributed Dr. Tewell's January 2011 assessment to a physician for

the county department of job and family services.  (Tr. 49, citing Tr. 474-45).  The ALJ gave the

report "little weight." (*Id.*).  The ALJ found that the assessment was based solely on plaintiff's

11

subjective complaints and self- reported limitations, "which defeats the purpose and value of a

medical source statement." (*Id.*). Further, the ALJ found the assessment was inconsistent with

the clinical examination findings he had thoroughly discussed earlier in his opinion. (*Id.*, citing

Tr. 45-48). Finally, the ALJ noted that although the report assessed plaintiff as limited to sitting

for 30 minutes, she was able to remain seated throughout the hearing, which lasted over 40

minutes, "with no reported difficulties or visible distress." (*Id.*).

Initially, the Court finds that insofar as the ALJ failed to assess Dr. Tewell's January

2011 opinion for "controlling weight," the ALJ's error was harmless. *Cf. Cole*, 661 F.3d at 940

(a violation of the "good reasons" rule can be deemed to be "harmless error" if "(1) a treating

source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if

the Commissioner adopts the opinion of the treating source or makes findings consistent with the

opinion; or (3) where the Commissioner has met the goal of § [404.1527(c)(2)] . . . even though

she has not complied with the terms of the regulation.") (quoting *Friend v. Comm'r of Soc. Sec.*,

375 F. App'x 543, 551 (6th Cir. 2010) (quoting *Wilson*, 378 F.3d at 547). The ALJ's analysis of

Dr. Tewell's January 2011 opinion meets the goals of the regulations, notwithstanding the ALJ's

failure to recognize Dr. Tewell as the author of the report. The ALJ thoroughly evaluated the

assessment and gave "good reasons" for rejecting Dr. Tewell's opinion. The ALJ reasonably

discounted Dr. Tewell's assessment because he found it was based solely on plaintiff's subjective

complaints and the limitations Dr. Tewell assessed were not consistent with the clinical

examination findings. *See Napier v. Colvin*, No. 1:13-cv-583, 2014 WL 2921823, at *5 (S.D.

Ohio June 26, 2014) (Bowman, M.J.) (ALJ properly discounted treating physician's

determination that plaintiff could not sustain long-term employment where it was "based on her

'subjective pain,' rather than any of his objective medical findings or treatment history with

Plaintiff.") (citing *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 979-80 (6th Cir. 2011)

(finding ALJ appropriately discounted treating physician's opinion which was "based largely on

plaintiff's subjective complaints and was not supported by other medical evidence in the

record")). *Cf. Durio v. Comm'r of Soc. Sec.*, No. 95-1089, 1996 WL 169362, at *2 (6th Cir.

1996) (discounting treating physician's reports of severe pain, stiffness, and swelling as an

apparent "characterization of the plaintiff's complaints, rather than the results of any independent

medical evaluation.").

Further, the ALJ reasonably discounted the 30-minute sitting limitation Dr. Tewell

assessed based on his observation that plaintiff was able to sit through a 40-minute hearing

without reporting any difficulty or showing any visible distress.  (Tr. 49).  Plaintiff argues that

the ALJ's use of the so-called "sit and squirm test" was erroneous.  (Doc. 11 at 15, citing *Martin*

*v. Sec'y of Health and Human Servs.,* 735 F.2d 1008, 1010 (6th Cir. 1984)).   However, *Martin* is

distinguishable from the present case.  The Court in *Martin* rejected use of the test and the ALJ's

dismissal of a claim based on pain premised "*solely* on the ALJ's observations at the hearing."

*Martin*, 735 F.2d at 1010 (quoting *Weaver v. Sec'y of Health and Human Servs.,* 722 F.2d 310,

312 (6th Cir. 1983) (emphasis added)).  In contrast, the Sixth Circuit has upheld the denial of

benefits despite the ALJ's reliance on personal observations of the claimant's demeanor at the

ALJ hearing in a case such as this, where the ALJ's personal observation was but one of several

factors, not the sole factor, in the ALJ's determination that the plaintiff's pain was not disabling.

*Cf. Johnson v. Comm'r of Soc. Sec.*, No. 99-1438, 2000 WL 332059, at *4 (6th Cir. Mar. 22,

2000) (ALJ wrote one sentence noting the plaintiff's demeanor at the hearing was "essentially

unremarkable and there were no indications of severe pain or discomfort"). Here, the ALJ did not rely on plaintiff's demeanor generally but considered only her demonstrated ability to sit for an extended period of time, which the ALJ reasonably found was inconsistent with Dr. Tewell's assessment of this specific function, as one of several factors when weighing the January 2011 opinion. Thus, the ALJ did not err by taking his observations of plaintiff into consideration when evaluating Dr. Tewell's January 2011 assessment.

Thus, although the ALJ failed to analyze Dr. Tewell's 2011 opinion for controlling weight, the ALJ's error was harmless. The ALJ gave "good reasons" for discounting the opinion and those reasons are substantially supported by the record.

Moreover, the ALJ acknowledged that Dr. Tewell in her capacity as treating physician had completed the June 2012 assessment, which is consistent in all material respects with the January 2011 opinion, and the ALJ assessed the 2012 opinion for controlling weight. (Tr. 49, citing Tr. 740-747). The ALJ declined to give the 2012 opinion "controlling weight" because he found it was inconsistent with other substantial evidence in the record, including imaging findings and largely negative examination results. (Tr. 49, citing Tr. 46-47). The ALJ instead afforded the opinion less than "significant weight" for "good reasons" which find substantial support in the record.

First, as the ALJ had determined in connection with the January 2011 report, the ALJ found that Dr. Tewell had "simply regurgitated" plaintiff's subjective reports basing the assessment on plaintiff's subjective complaints and self-reported limitations. (Tr. 49). The ALJ reiterated his concern that simply accepting a claimant's complaints at face value "defeats the purpose and value of a medical source statement." (*Id.*). Second, the ALJ reasonably discounted

14

the limitations Dr. Tewell assessed as internally inconsistent. *See Vorholt v. Comm'r of Soc.*

*Sec.*, 409 F. App'x 883, 889 (6th Cir. 2011) (ALJ entitled to give "little weight" to physician

report that was internally inconsistent). Dr. Tewell indicated that plaintiff could perform

sedentary work on a sustained basis; however, she also found that plaintiff was unable to lift

more than five pounds and stand/walk or sit more than one hour total out of an eight-hour

workday, which would preclude sedentary work. (Tr. 743-44, 747).[5] Third, as was true of the

2011 report, the ALJ found limitations Dr. Tewell assessed were not supported by "any

significant objective facts" and were inconsistent with the clinical examination findings. (Tr. 49,

citing Tr. 46-48). Rather than citing specific findings to support the limitations she assessed, Dr.

Tewell only vaguely asserted that plaintiff was "unable to work due to lumbar pain." (Tr. 49).

Finally, the ALJ reasonably determined that Dr. Tewell's opinion was inconsistent with

plaintiff's reported activities of daily living and her course of treatment, during which her

physicians never imposed limitations on her ability to walk or sit or functional limitations of

comparable severity to those imposed by Dr. Tewell. (*Id.*, citing Tr. 46-48).

Plaintiff alleges that the ALJ's decision to discount Dr. Tewell's June 2012 opinion

nonetheless is not supported by substantial evidence because: (1) Dr. Tewell's opinion is

consistent with the May 2012 assessment of examining physician Dr. Malloy, which plaintiff

alleges the ALJ erroneously rejected; and (2) the assessments of the state agency reviewing

physicians are the only evidence of record that contradicts Dr. Tewell's opinion. (Doc. 11 at 15).

Dr. Malloy completed a basic medical form at the request of the state agency indicating he had

---

[5] Dr. Tewell stated that plaintiff could sit up to one hour in an eight-hour workday, and she could sit "0" hours without interruption on any single occasion. (Tr. 744). This internal inconsistency further supports the ALJ's decision to discount Dr. Tewell's 2012 opinion.

last seen plaintiff on May 10, 2012. (Tr. 687-88). Findings on physical examination included 1+ edema of the ankles, no focal tenderness, "DTRs 2+ equal," decreased range of motion of the spine, and "normal knees[,] hips[,] etc[.]" (Tr. 687). Dr. Malloy listed plaintiff's medical conditions as degenerative disc disease of the lumbar spine, essential hypertension, chronic kidney disease, chronic constipation, allergic rhinitis, and major depressive disorder. (*Id.*). Dr. Malloy opined that plaintiff could stand/walk two hours in an eight-hour workday and 15 minutes without interruption, sit for three hours in an eight-hour workday and 20 minutes without interruption, and lift up to ten pounds occasionally and five pounds frequently. (Tr. 688). Dr. Malloy found that plaintiff was markedly limited in her ability to bend and moderately limited in her ability to push/pull, reach and perform repetitive foot movements due to "[b]ack and knee pain." (*Id.*). Dr. Malloy concluded that plaintiff was "unemployable." (*Id.*).

The ALJ gave Dr. Malloy's opinion "partial weight," finding the opinion was consistent with the objective imaging and clinical examination findings. (Tr. 48, citing Tr. 46-47). However, the ALJ found that the limitation restricting plaintiff to sitting 20 minutes at a time was not supported by the "longitudinal record." (*Id.*). In support of this finding, the ALJ relied on his thorough review of the medical evidence of record and his conclusion that plaintiff remained capable of performing a restricted range of sedentary work despite some physical limitations imposed by her impairments. (*Id.*). The ALJ also properly relied in part on plaintiff's ability to remain seated throughout the 40-minute hearing with no apparent difficulty. (Tr. 48). Although plaintiff disagrees with the ALJ's decision to reject Dr. Malloy's opinion on these grounds, the ALJ's finding must stand if the evidence could reasonably support the conclusion reached. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) (citing *Key v. Callahan*, 109 F.3d

270, 273 (6th Cir. 1997)).  The evidence cited by the ALJ reasonably supports his decision to reject the extreme sitting restriction assessed by Dr. Malloy.

Plaintiff suggests that the ALJ relied solely on the opinions of the state agency reviewing physicians to discount Dr. Tewell's opinion, and she alleges that substantial evidence for rejecting a treating physician's opinion must consist of more than the opinions of nonexamining sources.  (Doc. 11 at 14-15).  The record shows that the ALJ properly weighed the opinions of the treating and nonexamining physicians in light of the medical and other evidence of record and that his decision to reject Dr. Tewell's opinion was based on much more than the reviewing physicians' opinions.  The evidence on which the ALJ relied substantially supports the ALJ's decision.

For these reasons, plaintiff's second assignment of error should be overruled.

### 3. The ALJ's credibility finding is entitled to deference.

Plaintiff alleges that the ALJ erred in assessing her credibility.  (Doc. 11 at 16-18; Doc. 14 at 4-5).  Plaintiff alleges that the ALJ's credibility finding is unsupported because: (1) he misinterpreted her testimony regarding her daily activities to find she was not credible and she could perform a restricted range of sedentary work; and (2) the ALJ found that plaintiff suffers from severe medical impairments, including edema, which render her disabled.

Title 20 C.F.R. §§ 404.1529, 416.929 and Social Security Ruling 96-7p describe a two-part process for assessing the credibility of an individual's statements about symptoms, including pain.  First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those

17

symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Id.*

Upon review of the ALJ's complete credibility determination, the Court finds that the ALJ's credibility finding is substantially supported by the evidence of record and is entitled to deference. The ALJ made extensive findings regarding plaintiff's credibility in connection with his determination that plaintiff retained the RFC to perform sedentary work with both exertional and nonexertional restrictions. (Tr. 46-50). The ALJ thoroughly discussed the evidence in support of his finding that plaintiff's allegations of disabling symptoms were not fully credible in light of the objective evidence and clinical examination findings, her activities of daily living, and the medical opinion evidence showing that plaintiff is capable of performing a limited range of sedentary work. For the reasons discussed in connection with plaintiff's first assignment of error, the ALJ was not required to accept plaintiff's allegations requiring the need to elevate her legs to the level of her heart during the day. Nor was the ALJ bound to accept the limitations

18

assessed by Drs. Tewell and Malloy for the reasons discussed in connection with plaintiff's second assignment of error. The ALJ reasonably determined that the treating physician's opinion was based on plaintiff's subjective complaints and discounted the limitations she imposed as too extreme to credit. The ALJ also reasonably determined that the extreme sitting restriction assessed by Dr. Malloy was not consistent with the other evidence of record or with plaintiff's demeanor at the hearing. The ALJ was entitled to consider plaintiff's apparent ability to sit for an extended period of time as one factor in assessing her credibility. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (in light of the ALJ's opportunity to observe the individual's demeanor, the ALJ's credibility finding is entitled to deference and should not be discarded lightly).

Finally, the ALJ did not err by rejecting plaintiff's allegations of disabling pain and symptoms as inconsistent with her daily activities. Plaintiff testified that she was able to shop once a week, do her cooking and laundry, vacuum, sweep and dust with breaks, and clean the toilet. (Tr. 81). Plaintiff also testified that she had volunteered at an AA coffee shop three days a week from July 2010 until it closed in August 2011, which was during the period of alleged disability. (Tr. 81-82). Plaintiff's duties included making coffee and making sure the door was open. (Tr. 82). The ALJ reasonably discounted plaintiff's allegations of disabling physical impairments in light of these fairly extensive daily activities. *See Walters,* 127 F.3d at 532 ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments.").

Thus, plaintiff has not shown that the ALJ committed any error in connection with his assessment of plaintiff's credibility. The ALJ thoroughly evaluated the relevant factors and

evidence of record.  There is substantial evidence to support the ALJ's finding that plaintiff's allegations were not fully credible.  The ALJ's credibility finding is therefore entitled to deference.  Plaintiff's third assignment of error should be overruled.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this case be closed on the docket of the Court.

Date: ___8/3/15___

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JAYNE L. SORRELL,
    Plaintiff,

                                 Case No. 1:14-cv-625
                                 Dlott, J.
                                 Litkovitz, M.J.

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).